**BEFORE THE UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **In re Stock Food Photo Copyright Litigation** | MDL No. _____ |

**BRIEF IN SUPPORT OF MOTION BY MYPIZZA TECHNOLOGIES, INC. AND
ANGELO'S PIZZA OF POUGHKEEPSIE, INC. FOR TRANSFER AND
COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. § 1407**

Dated:  February 15, 2023

Mark Avsec
Andrew G. Fiorella
Lidia C. Mowad
BENESCH, FRIEDLANDER,
    COPLAN & ARONOFF LLP
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
Telephone:  216-363-4500
Facsimile:  216-363-4588
mavsec@beneschlaw.com
afiorella@beneschlaw.com
lmowad@beneschlaw.com

**Counsel for Defendants MyPizza
Technologies, Inc. *d/b/a* Slice and
Angelo's Pizza of Poughkeepsie, Inc.**

## TABLE OF CONTENTS

I.     INTRODUCTION……………………………………………………………………..1

II.    PROCEDURAL HISTORY........................................................................................ 4

    A.    The Parties ..................................................................................................... 4

    B.    The Stock Photo Lawsuits ............................................................................. 5

    C.    Prepared Food Photos Threatens As Many As 75 Additional
           Lawsuits ........................................................................................................ 8

    D.    Prepared Foods Photos Is A Serial Copyright Litigator ........................................ 9

III.   ARGUMENT .......................................................................................................... 10

    A.    Standard Of Review ..................................................................................... 10

    B.    The Stock Photo Lawsuits Pose The Same Questions of Fact And
           Law .............................................................................................................. 11

    C.    Transfer And Consolidation Will Promote Justice And Efficiency..................... 15

         i.    The Stock Photo Lawsuits Require Identical Discovery .......................... 16

         ii.   Consolidation And Transfer Will Avoid Inconsistent
              Pretrial Rulings ................................................................................. 17

         iii.  Conservation Of Resources.......................................................................... 18

    D.    Transfer To The Middle District Of Florida Will Further
           Convenience................................................................................................. 18

    E.    Voluntary Methods of Consolidation Have Been Rejected................................. 20

IV.   CONCLUSION....................................................................................................... 20

SCHEDULE OF ACTIONS

PROOF OF SERVICE

Exhibit A ..................................................................................Prepared Food Photos' Compl.,
                                                 Case No. 8:22-cv-1924 (M.D. Fla.)

Exhibit B ..........................................................................Prepared Food Photos' First Am.Compl.,
                                                 Case No. 1:22-cv-2119 (D. Md.)

Exhibit C ...................................................................Prepared Food Photos' First Am. Compl.,
Case No. 1:22-cv-07160 (S.D.N.Y.)

Exhibit D.................................................................................Prepared Food Photos' Compl.,
Case No. 2:22-cv-829 (M.D. Fla.)

Exhibit E .................................................................................Prepared Food Photos' Compl.
Case No. 1:22-cv-24195 (S.D. Fla.)

Exhibit F.................................................................................Prepared Food Photos' Compl.,
Case No. 1:22-cv-10951 (S.D.N.Y.)

Exhibit G .................................................................................Prepared Food Photos' Compl.,
Case No. 1:22-cv-3372 (D. Md.)

Exhibit H .......................................................Docket Report, Case No. 8:22-cv-1924 (M.D. Fla.)

Exhibit I ...........................................................Docket Report, Case No. 1:22-cv-2119 (D. Md.)

Exhibit J ....................................................... Docket Report, Case No. 1:22-cv-07160 (S.D.N.Y.)

Exhibit K.........................................................Docket Report, Case No. 2:22-cv-829 (M.D. Fla.)

Exhibit L ......................................................Docket Report, Case No. 1:22-cv-24195 (S.D. Fla.)

Exhibit M ..................................................... Docket Report, Case No. 1:22-cv-10951 (S.D.N.Y.)

Exhibit N.........................................................Docket Report, Case No. 1:22-cv-3372 (D. Md.)

Exhibit O.................................................Prepared Food Photos' First Discovery Reqs. to Slice,
Case No. 1:22-cv-2119 (D. Md.)

Exhibit P.................................................Prepared Food Photos' First Discovery Reqs. to Slice,
Case No. 8:22-cv-1924 (M.D. Fla.)

Exhibit Q ................................................................12/8/22 E-Mail from DeSouza to Avsec, *et al.*

Exhibit R ...............................................................2/6/23 E-Mail from DeSouza to Avsec, *et al.*

Exhibit S.................................................................Prepared Food Photos PACER Case Report

Exhibit T .......................................................................... 9/30/21 U.S. District Courts—Civil
Cases Commenced, Terminated, and Pending

Exhibit U........................................................................ Docket Analytics for Hon. Mary Scriven

Exhibit V.......................................................2/10/2023 E-Mail from Hausman to Mowad, *et al.*

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*In re "Truckin'" Cartoon Characters Copyright Litig.,*
    372 F. Supp. 1400 (J.P.M.L. 1974)..................................................................................14

*Adlife Marketing & Communications Co., Inc. v. Buckingham Bros., LLC,*
    Case. No. 5:19-CV-0795, 2020 WL 4795287 (August 18, 2020 N.D.N.Y)...........................10

*In re Aimster Copyright Litig.,*
    177 F. Supp. 2d 1380 (J.P.M.L. 2001)....................................................................10, 13, 14

*In re Ampicillin Antitrust Litig.,*
    315 F. Supp. 317 (J.P.M.L. 1970)....................................................................................18

*In re Best Line Prods. Sec. & Antitrust Litig.,*
    375 F. Supp. 926 (J.P.M.L. 1974)....................................................................................19

*In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig.,*
    424 F. Supp. 504 (J.P.M.L. 1976)....................................................................................10

*BUC Int'l Corp. v. Int'l Yacht Council Ltd.,*
    489 F.3d 1129 (11th Cir. 2007) .......................................................................................18

*In re Gator Corp. Software Trademark & Copyright Litig.,*
    259 F. Supp. 2d 1378 (J.P.M.L. 2003)........................................................................13, 17

*In re H & R Block Mortg. Corp. Prescreening Litig.,*
    435 F. Supp. 2d 1347 (J.P.M.L. 2006)..............................................................................19

*In re Japanese Elec. Prods. Antitrust Litig.,*
    388 F. Supp. 566 (J.P.M.L. 1975)....................................................................................15

*In re Literary Works in Elec. Databases Copyright Litig.,*
    2000 WL 33225502 (J.P.M.L. Dec. 6, 2000) ...............................................................13, 15

*In re Napster, Inc. Copyright Litig.,*
    No. MDL 1369, 2000 WL 35613839 (J.P.M.L. Oct. 11, 2000) ........................................13, 15

*In re New Mexico Natural Gas Antitrust Litig.,*
    482 F. Supp. 333 (J.P.M.L. 1979)....................................................................................18

*In re Plumbing Fixture Cases,*
    298 F. Supp. 484 (J.P.M.L. 1968)....................................................................................10

*In re Plywood Antitrust Litig.*,
    376 F. Supp. 1405 (J.P.M.L. 1974).........................................................................16

*Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp.*,
    453 F.2d 552 (2d Cir. 1972).................................................................................18

*In re The Exorcist Copyright Infringement Litig.*,
    41 F. Supp. 793 (J.P.M.L. 1976)....................................................................11, 17

*In re Visa/MasterCard Antitrust Litig.*,
    295 F. Supp. 2d 1379 (J.P.M.L. 2003)................................................................15

*In re Wheat Farmers Antitrust Class Action Litig.*,
    366 F. Supp. 1087 (J.P.M.L. 1973).....................................................................16

**Statutes**

28 U.S.C. § 1404............................................................................................................3

28 U.S.C. § 1404(a)......................................................................................................20

28 U.S.C. § 1407(a)......................................................................................................10

**Other Authorities**

ANN. MANUAL COMPLEX LIT. § 33.31 (4th ed.) .....................................................14, 17

3 NIMMER ON COPYRIGHT § 12.04 .........................................................................17, 18

## <u>TABLE OF ABBREVIATION</u>

"Slice" ...............................................................Defendant MyPizza Technologies, Inc. *d/b/a* Slice

"Angelo's" ..................... Defendant Angelo's Pizza of Poughkeepsie, Inc. *d/b/a* Tony's Pizza Pit

"Slice Movants" ................................................................Defendants Slice and Angelo's

"Stock Photo Lawsuits" ................................. The seven actions listed on the Schedule of Actions

"Prepared Food Photos"...................................................Plaintiff Prepared Food Photos, Inc. *f/k/a*
Adlife Marketing & Communications Co., Inc.

## I.    __INTRODUCTION__

In an attempt to drive up litigation costs, Plaintiff Prepared Food Photos has filed seven duplicative copyright lawsuits in several jurisdictions across the country ("the Stock Photo Lawsuits"), and now threatens to file dozens of additional lawsuits stretching from Maryland to California.  These cases concern twelve photographs allegedly used on Defendant Slice's[1] online service, with overlapping allegations between the cases, nearly verbatim-identical complaints, and similarly duplicative discovery requests.  All of these cases could have been brought in a single action in Prepared Foods Photos' home state of Florida.  Because the only material differences between these lawsuits are which of the twelve photographs are at issue and which local restaurant that used the Slice online ordering platform is implicated as a defendant, common factual issues predominate, as well as common legal questions that need to be decided in pretrial rulings.  Allowing the cases to proceed independently would needlessly duplicate work by the parties and the courts, and also create immediate risk of inconsistent pretrial rulings.

The Slice Movants' Motion should be granted, and these actions transferred and consolidated in the Middle District of Florida.  Across the Stock Photo Lawsuits, Prepared Food Photos alleges identical claims of copyright infringement against Slice and some of its small pizzeria customers for the supposed use of seven generic food photographs.  In addition to the undeniable practical benefits of transferring the Stock Photo Lawsuits—each action is brought by the same Plaintiff against Slice and will necessarily involve the same evidence and witnesses— those cases present common, fundamental questions of law and fact that should be decided consistently.  Those questions include whether the generic photographs at issue are entitled to copyright protection because they lack sufficient originality or creativity, whether Prepared Food

---

[1] Defendant MyPizza Technologies, Inc. *d/b/a* Slice.

Photos' inflated and disproportionate "subscription" model for damages is appropriate, and whether Slice is a direct or vicarious infringer.  Those and other common questions of law and fact, common defenses, and common discovery in the Stock Photo Lawsuits overwhelm the few, if any, unique issues presented in the individual cases.  Consequently, the Stock Photo Lawsuits satisfy each requirement for transfer and consolidation, and this Motion should be granted.

Slice provides online ordering, automated marketing, and other services for more than 18,000 independent pizzerias throughout the United States.  Angelo's, from Poughkeepsie, New York, is one of those pizzerias, as are the other defendants in the Stock Photo Lawsuits.  Prepared Food Photos purports to license stock photography for the food industry.  Prepared Food Photos is also a serial copyright litigator, formerly known as Adlife Marketing & Communications, Co., Inc., once notoriously represented by sanctioned attorney Richard Liebowitz.[2]  Prepared Food Photos has filed 120 lawsuits since June 2021 alleging similar types of copyright infringement claims in 24 district courts against a host of supposed infringers.  Now, it threatens to file against Slice no fewer than 16 and as many as 75 ***additional*** lawsuits in many districts across the nation, alleging overlapping copyright claims and damages theories as to just a dozen photographs.

The Stock Photo Lawsuits are particularly suitable for consolidation.  The complaints are nearly verbatim copies: the only difference is swapping the name of the Slice customer-defendant and sometimes switching the single stock photograph at issue in each case.  They each allege that Slice or a Slice customer, like Angelo's, uploaded Prepared Food Photos' images to Slice's online ordering platform.  They each allege the same conduct.  And they each seek the same unrealistic damages: a license predicated on Prepared Food Photos' supposed $999 "unlimited" monthly

---

[2]   https://www.reuters.com/legal/transactional/2nd-circuit-affirms-nationwide-sanctions-against-copyright-attorney-liebowitz-2021-06-25/

subscription charge for access to thousands of images.  Even assuming that the generic works at issue qualified for copyright protection, the harm alleged is untethered to the damages demanded. The efficient resolution of these identical actions, including the suits to come, call for a single district to oversee pretrial proceedings.

Moreover, Slice is the only real economic and legal target of the Stock Photo Lawsuits. There is no reason to harass these small pizzerias or to have Slice chase what is effectively the same action in multiple districts.  Indeed, were Prepared Food Photos to prevail in any one lawsuit on its claims and damages theory alleging that Slice should have paid for a $999/month "unlimited" license to all of Prepared Foods Photos' works, that single judgment in any one of these cases would provide a full satisfaction and extinguish any claim for damages in all remaining cases.  The Stock Photo Lawsuits therefore fall within Prepared Food Photos' litigation pattern of filing multiple lawsuits to increase costs.  The Panel should bring all of Prepared Food Photos' current and future actions involving Slice in a single district.

The Slice Movants submit that the Middle District of Florida should be that court.  It would be convenient because the parties are already committed to litigate two cases there, and one of those is among the furthest along.  Moreover, the Honorable Judge Mary Scriven is already presiding over one of the Stock Photo Lawsuits and has specific experience with Prepared Foods Photos' other copyright infringement cases.  Additionally, Prepared Food Photos is located in Broward County, Florida, and cannot complain that proceeding in California, New York, Maryland, and other jurisdictions across the country are somehow more convenient to it.

Finally, before filing this Motion, the Slice Movants explored the possibility of employing voluntary alternatives to transfer and consolidation, including under 28 U.S.C. § 1404. Specifically, the Slice Movants sought consent from Prepared Food Photos for transfer of the Stock

Photo Lawsuits to the Middle District of Florida, and identified the facts supporting this Motion. Prepared Food Photos rejected any possibility of transferring or consolidating these lawsuits.

In short, the Stock Photo Lawsuits should be transferred and consolidated in the Middle District of Florida, for at least four reasons: (1) the actions pose identical, complex questions of fact and law regarding the copyright claims alleged; (2) transfer would be just and efficient because there really are only two parties in these cases—Prepared Food Photos and Slice; (3) transfer to the Middle District of Florida would be convenient because of nearly complete overlap of these cases as well as the proximity to Prepared Food Photos; and (4) voluntary options to consolidate have been rejected by Prepared Food Photos.  The Slice Movants' Motion should be granted.

## II.   <u>PROCEDURAL HISTORY</u>

### A.   <u>The Parties</u>

Prepared Food Photos claims to license generic stock food photography.  (*See generally* https://preparedfoodphotos.com (splash page).)  Prepared Food Photos offers only a single license option that provides "UNLIMITED downloads for $999 per month[.]" (https://preparedfoodphotos.com/featured-subscriptions (emphasis in original); *see also, e.g.*, Ex. A ¶ 10 ("Plaintiff charges its clients (generally, grocery stores, restaurant chains, food service companies, etc.) a monthly fee of $999.00 for access to its library of professional photographs.").) A Prepared Food Photos subscriber supposedly must agree to a "minimum 12-month term" for access, totaling a total of $11,998.00 per year.  (*See* Ex. Q, 12/8/2022 E-Mail from DeSouza to Avsec *et al.*, at 3.)  This purported licensing fee does not vary based on market, and because of Prepared Food Photos' high costs and inflexible licensing terms, it is not clear whether any of its licensees willingly purchase these licenses for their businesses, or whether all licenses have been obtained in response to litigation threats or through settlement.

Slice provides inexpensive, accessible technology to local, independent pizzerias. Slice's mission is focused on supporting small brick-and-mortar businesses to help them compete against the large national establishments.   (https://slicelife.com/pages/about-us.)  Slice does this by "empowering independent pizzerias with the tech and services that power the big chains [that enables] them to be in business for themselves, not by themselves." (*Id.*)  Slice offers these pizzerias a number of services, including a website, mobile application, and underlying software to support online or mobile orders and deliveries.   (*See* https://slicelife.com/owners.) Slice customers can provide their menus online, with descriptions and photographs, to facilitate customer orders.  (*See* https://slicelife.partners/online-ordering.)

Angelo's, along with the six other pizzerias named in the Stock Photo Lawsuits, are Slice customers.  Those pizzerias advertise their menus, with photograph depictions of various food items, on slicelife.com (the "Slice Website") and in Slice's mobile app. (*See* https://slicelife.partners/websites and https://slicelife.com/pages/apps.)

### B.     The Stock Photo Lawsuits

In each of the Stock Photo Lawsuits, Prepared Food Photos alleges that the Slice Movants and the other pizzeria defendants ("Restaurant Defendants")used its purportedly "high-end" food photographs without a license or authorization in violation of the Copyright Act.  (*See, e.g.*, Ex. C ¶¶ 7, 27, 32-47.)  Prepared Food Photos has filed seven actions against Slice and seven different Restaurant Defendants  in the Middle District of Florida, Southern District of Florida, District of Maryland, and the Southern District of New York.  This table summarizes the district courts, dates of filing, caption, and case number for each of the Stock Photo Lawsuits:

| District | Date Filed | Caption | Case and Ex. No. |
|----------|-----------|---------|------------------|
| M.D. Fla. | 8/8/22 | *Prepared Food Photos, Inc. v. Zein LLC, et al.* | 8:22-cv-1924, Ex. A (Compl.) |
| D. Md. | 8/8/22 | *Prepared Food Photos, Inc. v. Three Brothers, et al.* | 1:22-cv-2119, Ex. B (Compl.) |
| S.D.N.Y. | 8/8/22 | *Prepared Food Photos, Inc. v. Angelo's Pizza Of Poughkeepsie, Inc., et al.* | 1:22-cv-7160, Ex. C (Am. Compl.) |
| M.D. Fla. | 12/23/22 | *Prepared Food Photos, Inc. v. Mola Pizza, Inc., et al.* | 2:22-cv-829, Ex. D (Compl.) |
| S.D. Fla. | 12/23/22 | *Prepared Food Photos, Inc. v. Original Big Tomato, LLC, et al.* | 1:22-cv-24195, Ex. E (Compl.) |
| S.D.N.Y. | 12/29/22 | *Prepared Food Photos, Inc. v. Bravo West Pizza, LLC, et al.* | 1:22-cv-10951, Ex. F (Compl.) |
| D. Md. | 12/30/22 | *Prepared Food Photos, Inc. v. N & K Foods, Inc., et al.* | 1:22-cv-3372, Ex. G (Compl.) |

Each of the Stock Photo Lawsuits involve Prepared Food Photos as plaintiff and Slice as defendant. (*See generally* Exs. A-G.)  In recent days, Prepared Food Photos stated that it plans to file two additional lawsuits in California and New York.  (*See* Ex. V, 2/10/2023 Email from Hausman to Mowad *et al*.)

Prepared Food Photos alleges that Slice directly or vicariously infringed on Prepared Food Photos' copyrights by allegedly copying-and-pasting those photographs into the online menus available for each Restaurant Defendant or on Facebook posts.  (*See, e.g.*, Ex. C ¶¶ 24-25.)  Each of the Stock Photo Lawsuits allege nearly identical copyright infringement claims against the Slice Movants and the other Restaurant Defendants, varying only as to the subject photograph(s), and with any verbatim allegations across the various cases.  (*Compare, e.g.*, Ex. A, ¶¶ 28-45 (alleging copyright infringement against Slice), *with* Ex. B, ¶¶ 27-42 (same), *with* Ex. C, ¶¶ 32-41 (same), *with* Ex. D, ¶¶ 29-46 (same), *with* Ex. E, ¶¶ 28-45 (same), *with* Ex. F, ¶¶ 27-43 (same), *with* Ex. G, ¶¶ 27-43 (same).)  The alleged conduct across the Stock Photo Lawsuits are the same.

The seven works at issue in the seven Stock photo Lawsuits are photographs of common items offered by pizzerias, like chicken wings.  Two of the actions involve the same photograph

(Ex. A, ¶ 13l (M.D. Fla.); Ex. F, ¶ 12; (S.D.N.Y.) (both alleging infringement of "ChickenWingHot007")), and the seven works originate from just two photographers (Ex. A at 21, Ex. B at 20, Ex. E at 22, Ex. F at 20, Ex. G at 21 (each identifying "Joel Albrizio" as author); Ex. C at 17, Ex. D at 17 (each identifying "David Ciolfi" as author)).  Specifically, the works at issue are reproduced in this table with citations to the allegations in the Stock Photo Lawsuits:



"ChickenWingHot007"
Ex. A, ¶ 13l (M.D. Fla.); and
Ex. F, ¶ 12; (S.D.N.Y.)

"ChickenWingBuffalo006"
Ex. B, ¶ 12 (D. Md.)

"WrapChickenCaesar002"
Ex. C, ¶ 12 (S.D.N.Y.)

"CalzoneItalianColdCut007_ADL"
Ex. C, ¶ 15 (S.D.N.Y.)

"FettuciniAlfredo001"
Ex. D, ¶ 12 (M.D. Fla.)

"ChickenWingHot004_ADL"
Ex. E, ¶ 13 (S.D. Fla.)

"ChickenTender004"
Ex. G., ¶ 12 (D. Md.)

In each case, Prepared Food Photos seeks identical relief, including declarations of infringement and willful infringement, "actual damages and disgorgement of profits" or "up to

$150,000" for each infringement, and attorneys' fees and costs.  (Ex. A, ¶61a-g; Ex. B, ¶ 60a-g; Ex. C, ¶ 65a-g; Ex. D, ¶62-a-g; Ex. E, ¶ 61a-g; Ex. F, ¶ 61a-g; Ex. G, ¶ 61a-g.)

Discovery has begun in only two of the Stock Photo Lawsuits, including in the *Zein* matter pending in the Middle District of Florida.  (*See* Ex. O, Prepared Food Photos' First Set of Discovery Reqs. in First D. Md. Lawsuit; Ex. P, Prepared Food Photos' First Set of Discovery Reqs. in First M.D. Fla. Lawsuit.)  The remaining cases are in their most preliminary stages.

### C.    Prepared Food Photos Threatens As Many As 75 Additional Lawsuits

Prepared Food Photos has threatened to file between 28 and as many as 75 additional copyright actions against Slice and its customers.  Prepared Food Photos' counsel asserted that each new case would be "individual cases involving different restaurants across the country" and that "each unique restaurant would be a unique lawsuit (if filed)."  (Ex. R, 2/6/2023 E-Mail from DeSouza to Avsec *et al.*, at 3.)  Counsel represented that they would be "in different jurisdictions around the country."  (*Id.*)  Because Prepared Food Photos is located in Florida, it is evident that their repeated threats to file multiple lawsuits in different jurisdictions across the country and refusal to consolidate the actions are intended to drive up the expense and burden of litigation.

On February 6, 2023, Prepared Foods Photos' counsel sent a list of "the various MyPizza/Slice 'sightings' and image names that [they] are currently aware of."  (*See* Ex. R, , at 1.)  This threat was accompanied by a list of the 12 "Infringed Photo(s)" and purported Slice customers who are the targets of Prepared Foods Photos.  (*See* Ex. R, at 9-10.)  Based on the locations of just those target pizzerias and Prepared Food Photos' threat to bring lawsuits in the locations where those Restaurant Defendants are based, Prepared Food Photos appears intent on bringing other Stock Photo Lawsuits in at least 11 additional districts:  (1) Eastern District of Pennsylvania ("Bella Italia Pizza" and "Love Park Pizza & Chicken"); (2) the District of Massachusetts ("Best Pizza" and "Pinky's Famous Pizza"); (3) the Middle District of North

Carolina ("Capri's Pizzeria & Family Restaurant," "Los Primos Restaurant and Bar," and "Maria's Famous Subs & Pizza"); (4) the Northern District of Texas ("DiRosani's Fine Italian Restaurant"); (5) the Western District of Virginia ("Giardino Pizzeria & Restaurant"); (6) the Eastern District of Michigan ("Huckleberry Junction Playhouse Theater"); (7) the District of Connecticut ("Naples Restaurant & Pizza" and "Planet Pizza"); (8) the Western District of New York ("Primo Classico"); (9) the Eastern District of Michigan ("Toarmina's Pizza"); (10) the Middle District of Pennsylvania ("Tony's Pizza"); and (11) the Central District of California ("Valentino's Pizza").  (*See generally id.*)

Further, Prepared Foods Photos' counsel reported that his client "is speculating that there are ***at least*** 75 individual infringement cases" waiting in the wings.  (*Id.* at 1 (emphasis added).)  In relevant context, counsel wrote:



(*Id.* (emphasis added).)  Those cases, if filed, will spread this litigation to even more district courts.

**D.      Prepared Foods Photos Is A Serial Copyright Litigator**

Prepared Foods Photos is a serial copyright litigator, which gives some credibility to its threats of dozens of future lawsuits against Slice and its customers.  Specifically, from June 2021 to the date of filing this Motion, Prepared Food Photos has filed 120 lawsuits alleging copyright claims that are similar to the Stock Photo Lawsuits, in 24 different district courts, against a number of alleged infringers.  (*See* Ex. S, Pacer Report.)  In fact, Prepared Foods Photos' counsel has candidly admitted that "the client sends us approximately 20 – 30 new infringement files on a weekly basis . . . ."  (*See* Ex. Q, at 4.)  Prepared Food Photos is also formerly known as Adlife

Marketing & Communications, Co., Inc., once notoriously represented by sanctioned attorney Richard Liebowitz.  In at least one instance, a court sanctioned Liebowitz specifically for his representation of Adlife and "frivolous assertions with respect to . . . the value of Adlife's copyright" in stock photograph of pork because "Liebowitz . . . asserted an unreasonable value for Adlife's copyright."  *Adlife Marketing & Communications Co., Inc. v. Buckingham Bros., LLC*, Case. No. 5:19-CV-0795 (LEK/CFH), 2020 WL 4795287, *7-12 (August 18, 2020 N.D.N.Y).

III.   **ARGUMENT**

   A.   **Standard Of Review**

   The Panel may transfer and consolidate two or more civil cases for coordinated or consolidated pretrial proceedings where it finds:  (a) that the cases "involve[e] one or more common questions of fact;" (b) that the transfers will "promote the just and efficient conduct of [the] actions;" and (c) that the transfers will further "the convenience of parties and witnesses." 28 U.S.C. § 1407(a).

   In ruling on motions, the Panel considers whether transfer and consolidation actions will "[1] eliminate duplicative discovery; [2] prevent inconsistent pretrial rulings; and [3] conserve the resources of the parties, their counsel, and the judiciary."  *In re Aimster Copyright Litig*., 177 F. Supp. 2d 1380, 1382 (J.P.M.L. 2001) (granting consolidation in a copyright case); *see also In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491 (J.P.M.L. 1968) (ordering transfer and holding that the "remedial aim" of Section 1407 is "to eliminate the potential for conflicting contemporaneous pretrial rulings"); *In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig.*, 424 F. Supp. 504, 507 (J.P.M.L. 1976) ("one of the purposes of coordinated or consolidated pretrial proceedings is to streamline the efforts of the parties and witnesses, their counsel and the judiciary in order to effectuate an overall savings of cost and a minimum of inconvenience to all

concerned") (citing *In re Nissan Motor Corp. Antitrust Litig.*, 385 F. Supp. 1253, 1255 (J.P.M.L. 1974)).

### B.   <u>The Stock Photo Lawsuits Pose The Same Questions of Fact And Law</u>

The Stock Photo Lawsuits involve nearly identical allegations and present the same factual and legal issues, which should be resolved in a coordinated and consistent manner.  The same intellectual property and same type and level of exploitation are at issue.  The subject matter of the subject photographs does not vary—each of the subject photographs are all common, stock food photographs taken by two photographers.  The only material differences among the cases are different Slice customer Restaurant Defendants.  As a result, the Stock Photo Lawsuits share at least the following common questions of fact and law:

**<u>Infringement</u>**.   Whether Defendants' alleged reproduction, display, distribution, and/or use of the subject photographs—particularly with respect to Slice—constitutes copyright infringement under the Copyright Act (Ex. A, ¶ 25 ("Zein's and/or Slice located a copy of the Work on the internet and, rather than contact Plaintiff to secure a license, simply copied the Work for Zein's own commercial use"); Ex. B, ¶ 24 (identical allegation, substituting Three Brothers for Zein); Ex. C, ¶ 29 (identical allegation, substituting Tony's); Ex. D, ¶ 26 (identical allegation, substituting Mola Pizza); Ex. E, ¶ 25 (identical allegation, substituting Original Big Tomato); Ex. F, ¶ 24 (identical allegation, substituting Bravo); Ex. G, ¶ 24 (identical allegation, substituting Wings, Things & Pizza));

**<u>Modicum of Creativity</u>**.   Whether the subject photographs are sufficiently original to be entitled to any copyright protection because those photographs appear to lack the modicum of creativity required for protection (*see* Ex. A, ¶ 29 ("[t]he Work is an original work of authorship, embodying copyrightable subject matter, that is subject to the full protection of the United States

copyright laws"); Ex. B, ¶ 28 (same); Ex. C, ¶ 33 (same); Ex. D, ¶ 30 (same); Ex. E, ¶ 29 (same); Ex. F, ¶ 28 (same); Ex. G, ¶ 28 (same));

**Copyright Defenses**.  Whether Prepared Food Photos' claims are barred by other copyright doctrines, including scene-a-faire, idea-expression merger, and other subject-matter based defenses (Ex. A, ¶¶ 13 (the photo), 29; Ex. B, ¶¶ 12 (the photo), 28; Ex. C, ¶¶ 12 (the photo), 15, 33; Ex. D, ¶¶ 13 (the photo), 30; Ex. E, ¶¶ 13 (the photo), 29; Ex. F, ¶¶ 12 (the photo), 28; Ex. G, ¶¶ 12 (the photo), 28);

**Independent Creation**.  Whether the subject photographs were independently created by the only two photographers across the Stock Photo Lawsuits (Ex. A, ¶¶ 29-30; Ex. B, ¶¶ 28-29; Ex. C, ¶¶ 33-34; Ex. D, ¶¶ 30-31; Ex. E, ¶¶ 29-30; Ex. F, ¶ 28-29; Ex. G, ¶¶ 28-29);

"**Willfulness.**"  Whether any Defendant acted either willfully and/or with reckless disregard with respect to the acts of infringement (Ex. A, ¶ 40 (alleging Slice is a willful infringer because "Slice itself utilizes a copyright disclaimer on its website" and "Slice clearly understands that professional photography such as the Work is generally paid for and cannot simply be copied from the internet"); Ex. B, ¶ 37 (identical allegations); Ex. C, ¶ 42 (identical allegations); Ex. D, ¶ 41 (identical allegations); Ex. E, ¶ 40 (identical allegations); Ex. F, ¶ 38 (identical allegations with case citations); Ex. G, ¶ 56 (identical allegations with case citations));

**Licensing Model for Damages**.  Whether, assuming that the photographs are protectable under copyright, Prepared Food Photos' $999/month for not-less-than-one-year blanket licensing fee is the fair market value of the use of any one photograph (Ex. A, ¶¶ 10-13 (alleging Prepared Food Photos' licensing model); Ex. B, ¶¶ 9-11 (identical allegations); Ex. C, ¶¶ 9-11 (identical allegations); Ex. D, ¶¶ 10-12 (identical allegations); Ex. E, ¶¶ 10-12 (identical allegations); Ex. F, ¶¶ 9-11 (identical allegations); Ex. G, ¶¶ 9-11 (identical allegations)); and

**Duplicative Damages**.   Whether Prepared Food Photos' recovery is limited by any damages limitations theories, including the "one-satisfaction rule" and principles of joint and several liability inherent to copyright claims, especially in light of Prepared Food Photos' demands for separate, repeated licensing fee rewards from Slice in at least seven (and potentially as many as 75) lawsuits (Ex. A, ¶¶ 34-45 (direct and vicarious liability allegations against Slice), ¶¶ 52-61 (direct and vicarious liability allegations against Zein); Ex. B, ¶¶ 33-42 (against Slice), ¶¶ 49-60 (against Three Brothers); Ex. C, ¶¶ 38-47 (against Slice), ¶¶ 54-65 (against Angelo's); Ex. D, ¶¶ 35-46 (against Slice), ¶¶ 53-62 (against Mola); Ex. E, ¶¶ 34-45 (against Slice), ¶¶ 52-61 (against Original Big Tomato); Ex. F, ¶¶ 33-43 (against Slice), ¶¶ 50-61 (against Bravo West); Ex. G, ¶¶ 33-43 (against Slice), ¶¶ 50-61 (against N&K Foods)).

More than just common questions of law and fact, the Stock Photo Lawsuits are carbon copies of each other.

Under similar circumstances, the Panel has found that "common, complex legal and factual questions" arise favoring consolidation regarding "whether the computer . . . network operated by [a party] functions in such a way as to constitute . . . copyright infringement." *In re Gator Corp. Software Trademark & Copyright Litig.*, 259 F. Supp. 2d 1378, 1380 (J.P.M.L. 2003); *see also In re Aimster Copyright Litig.*, 177 F. Supp. 2d at 1382 (finding "common factual questions concern[ing] whether the distribution of files over the Internet using the Aimster service constitutes copyright infringement"); *In re Napster, Inc. Copyright Litig.*, No. MDL 1369, 2000 WL 35613839, at *1 (J.P.M.L. Oct. 11, 2000) (finding distribution of a copywritten work over the Internet presents "common, complex legal and factual questions" including "whether the distribution" of a work "constitutes copyright infringement" and whether common defenses are available); *In re Literary Works in Elec. Databases Copyright Litig.*, 2000 WL 33225502, at *1

(J.P.M.L. Dec. 6, 2000) ("the Panel finds that the actions in this litigation involve common questions of fact relating to whether plaintiffs' copyrighted works have been included in electronic databases in violation of the Copyright Act").  "Many of the complexities accompanying copyright litigation arise out of the growth and development of new technologies and transmissions, particularly on-line dissemination."  ANN. MANUAL COMPLEX LIT. § 33.31 (4th ed.).

Further, Prepared Food Photos' uniform allegations regarding the exploitation of the photographs on a single Internet platform support consolidation.  The complaints each allege that Slice is either a direct or vicarious infringer by virtue of either Slice or the Restaurant Defendants uploading the photographs to Slice's platform to depict a menu item.  (*See, e.g.*, Ex. C, ¶ 29 ("Tony's and/or Slice located a copy of the Work on the internet and, rather than contact Plaintiff to secure a license, simply copied the Work for Tony's own commercial use").)  The Panel has found that such similarity favors consolidation.  *Compare In re Aimster Copyright Litig.*, 177 F. Supp. 2d at 1382 (granting transfer where the alleged infringing exploitation occurred on a single Internet platform); *with In re "Truckin'" Cartoon Characters Copyright Litig.*, 372 F. Supp. 1400, 1401 (J.P.M.L. 1974) ("Since defendants market the novelty items at different levels, and the nature and degree of their use of the 'Truckin' characters various widely, discovery in each action will necessarily focus on individualized conduct.").

Moreover, Prepared Food Photos served duplicative discovery requests, perhaps believing that there is some sort of coordinated conduct across the Stock Photo Lawsuits.  Prepared Food Photos served discovery requests seeking information and documents showing where *else* the subject photograph was used across the Slice Website and which *other* photographs Slice may have used across the Slice Website.  (*See, e.g.*, Ex. O, at 4 (regarding other sub-pages of the Website where the subject photograph was posted) and *id.*, at 7 (regarding photographs *other than*

- 14 -

subject photograph); Ex. P, at 4 (regarding photographs *other than* subject photograph) and *id.*, at 8 (regarding other sub-pages of the Website where the subject photograph was posted).)

The Stock Photo Lawsuits also each involve the same copyright defenses, which the Panel has recognized presents common, complex legal and factual questions. *In re Napster, Inc. Copyright Litig.*, 2000 WL 35613839, at *1 ("[a]ll MDL–1369 actions present common, complex legal and factual questions concerning . . . the availability of [copyright] defenses"). The Slice Movants have asserted the same copyright defenses in each case, and those defenses will be litigated in each of the Lawsuits.

The only non-identical issues in the Stock Photo Lawsuits—the individual Restaurant Defendants' actions—do not pose an obstacle to consolidation. In addition to being a minor aspect of the allegations, strict identity of defendants is not required for transfer under Section 1407. *See In re Japanese Elec. Prods. Antitrust Litig.*, 388 F. Supp. 566, 567 (J.P.M.L. 1975) ("Transfer under Section 1406 is not dependent on a strict identity of . . . parties but rather on the existence of one or more common questions of fact"). The possibility of inconsistent decisions on the identical issues alone is enough to overwhelm any minor individual variations.

### C.   Transfer And Consolidation Will Promote Justice And Efficiency

The Stock Photo Lawsuits are nearly identical, and stopping the necessarily wasteful duplication of resources and efforts now would promote the just and efficient resolution of these cases. The Panel has repeatedly recognized that a centralized forum is appropriate when it produces such convenience and economy. *See, e.g.*, *In re Literary Works*, 2000 WL 33225502, at *1 (holding that centralization of copyright actions under Section 1407 was warranted where centralization was necessary to eliminate duplicative discovery and prevent inconsistent or repetitive rulings); *In re Napster, Inc. Copyright Litig.*, 2000 WL 35613839, at *1 (same); *see also In re Visa/MasterCard Antitrust Litig.*, 295 F. Supp. 2d 1379, 1380 (J.P.M.L. 2003)

- 15 -

("centralization under 1407 is thus necessary . . . to avoid duplication of discovery . . . and conserve the resources of the parties, their counsel and the judiciary").

Additionally, Prepared Food Photos' damages theory in each case is that Slice should have purchased an "unlimited" license to all of Prepared Food Photos' library, at a single monthly price that does not change regardless of how many photographs are used.  For this reason, should Prepared Food Photos prevail in any one lawsuit and elect statutory damages, including prevailing under summary judgment, the damages it obtains would satisfy and extinguish the claims in all other lawsuits against Slice.  It is enormously wasteful to require courts throughout the nation to proceed with these cases separately, only to have the first-decided case moot the rest of them.

i. <b><u>The Stock Photo Lawsuits Require Identical Discovery</u></b>

A uniform and coordinated approach to discovery in the Stock Photo Lawsuits will avoid at least a sevenfold duplication of efforts in those cases—and likely more.  The Panel significantly values the benefit of consolidation to avoid early discovery duplication.  *See In re Wheat Farmers Antitrust Class Action Litig.*, 366 F. Supp. 1087 (J.P.M.L. 1973) (transferring actions to avoid duplication of discovery); *In re Plywood Antitrust Litig.*, 376 F. Supp. 1405, 1406 (J.P.M.L. 1974) ("transfer of the actions to a single district will prevent the possibility of duplicative discovery concerning defendants' alleged misconduct").

The Slice Movants' duplication concerns are not conjecture.  In the two cases that proceeded to discovery, Prepared Food Photos has already served nearly identical requests.  (*Compare* Ex. O (discovery served in Case No. 1:22-cv-2119 (D. Md.), *with* Ex. P (discovery served in Case No. 8:22-cv-1924 (M.D. Fla.).)   Those requests include 16 interrogatories, 38 requests for production, and 29 requests for admission—directed only at Slice.  Not only would transfer and consolidation limit the burden on Defendants, but also prevent Prepared Food Photos from exceeding the limitations of the Federal Rules of Civil Procedure by making different

- 16 -

requests in the various Stock Photo Lawsuits regarding the other lawsuits.  *See In re The Exorcist Copyright Infringement Litig.*, 41 F. Supp. 793, 794 (J.P.M.L. 1976) ("the transferee judge has the flexibility to design a pretrial program that will accommodate the needs of each party for any unique discovery or judicial attention concurrently with the common pretrial matters"); *In re Gator Corp.*, 259 F. Supp. 2d at  1380 ("we observe that transfer under Section 1407 has the salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that . . . allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues").  Granting the Motion, therefore, will ensure that Defendants are subject to equal obligations and Plaintiff is subject to reasonable limitation.

### ii.   Consolidation And Transfer Will Avoid Inconsistent Pretrial Rulings

Transfer and consolidation will avoid the real possibility of inconsistent pretrial rulings in the Stock Photo Lawsuits.  In addition to the dangers inherent to any parallel litigation, copyright disputes like these cases present complex concepts—ownership, validity, infringement, and unique defenses—that are likely to be resolved through pretrial motions.  Both the risk of inconsistent judgments and "issues of collateral estoppel may arise where multiple [copyright] infringements have occurred."  Ann. Manual Complex Lit. § 33.31 (4th ed.).

As two specific examples, the issues of joint and several liability and the application of the one-satisfaction rule pose a risk of inconsistent decisions across the Stock Photo Lawsuits:

*First*, under the Copyright Act, "[r]elated defendants are jointly and severally liable for the plaintiff's total damages."  3 Nimmer on Copyright § 12.04.  In consideration of Prepared Food Photos' apparent theory of "coordinated" conduct, one district may rule that Slice and its customer Restaurant Defendants are jointly and severally liable for the use of a photograph.  Another district may rule differently.  Parsing liability and the collateral effect of a ruling for one photograph across seven (to possibly 75) lawsuits will be unnecessarily complex to coordinate.

*Second*, as described above, Prepared Food Photos' subscription-based damages theory is limited by the one-satisfaction rule. *Id.* That rule "generally provides that a plaintiff is entitled to only one satisfaction for a single injury, such that amounts received in settlement from an alleged tortfeasor are credited against judgments for the same injury against non-settling tortfeasors." *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129 (11th Cir. 2007); *see also Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp.*, 453 F.2d 552, 554 (2d Cir. 1972). The conclusion of one case may therefore moot the rest. But because one district may allow subscription-based damages, while another may not, inconsistent rulings may result if not consolidated.

### iii.    Conservation Of Resources

Transfer and consolidation will also conserve the resources of the parties, their counsel, and the judiciary. In addition to the party and counsel efficiencies described in this Brief, judicial resources will also be conserved by granting the Motion. It makes little practical sense for multiple district judges to pass on the same issues in different districts for what is in essence and substance a single copyright dispute between Prepared Food Photos and Slice.

### D.    Transfer To The Middle District Of Florida Will Further Convenience

The Stock Photo Lawsuits should be transferred to United States District Court for the Middle District of Florida before the Honorable Judge Mary Scriven for substantive reasons and for the convenience of the parties and witnesses. The Panel considers several factors when determining the most appropriate forum for transfer: where the "actions have been filed;" where "would be more convenient" to the parties and witnesses; the comparative advancement of any particular litigation; "the availability of an experienced and capable judge familiar with the litigation;" the "choice" of the parties; the "pendency of" other litigations and whether they may be transferred (*In re Ampicillin Antitrust Litig.*, 315 F. Supp. 317, 319 (J.P.M.L. 1970)); where "witnesses and documents may be found"; where the conduct "had its effect" (*In re New*

*Mexico Natural Gas Antitrust Litig.*, 482 F. Supp. 333, 337 (J.P.M.L. 1979)); and the respective caseloads of the proposed transferring courts (*In re H & R Block Mortg. Corp. Prescreening Litig.*, 435 F. Supp. 2d 1347, 1349 (J.P.M.L. 2006)).

Balancing those factors and considerations, the Middle District of Florida is the best choice for the Lawsuits and any tag-along actions for four reasons:

*First*, Middle District of Florida is convenient for the parties and the witnesses. Prepared Food Photos is a corporation organized and existing under the laws of the State of Florida, with its principal place of business located in Broward County, Florida, not far from the Middle District. Prepared Food Photos has already agreed to make its witnesses available in the Middle District of Florida by filing two of the Stock Photo Lawsuits there. (*See* Ex. A; Ex. D.) Further, at least three of the Restaurant Defendants are allegedly located in Florida and two in that District. (*See* Ex. A, Ex. D, Ex. E.) The Slice Movants have already submitted to the jurisdiction of the Middle District of Florida and do not contest jurisdiction in that District. (*See* Ex. H at 2-3 (Docket Report in *Zein* (M.D. Fla.); Ex. K at 1 (Docket Report in *Mola* (M.D. Fla.).)

*Second*, the Middle District of Florida has the strongest ties to the Lawsuits. One of the first two cases was filed in the Middle District. (See Ex. A.) Although none of the cases have progressed beyond the earliest stages, the proceedings are among the furthest along in the Middle District of Florida (and the District of Maryland). (Ex. A; Ex. H; Ex. P.) *See In re Best Line Prods. Sec. & Antitrust Litig.*, 375 F. Supp. 926 (J.P.M.L. 1974) (holding that the appropriate transferee district is the one in which the case has progressed further than others).

*Third*, the Honorable Judge Mary Scriven has specific experience relevant for resolving these unique, complex proceedings. Judge Scriven has presided over other Prepared Food Photos cases, (Ex. U, at 2 (regarding *Prepared Food Photos, Inc. v. Ovation Bistro & Bar, LLC*), and has

- 19 -

previously presided over copyright and copyright photography lawsuits (Ex. U, Experience Analytics for Copyright Actions).

*Fourth*, the Middle District of Florida's docket volume compares favorably with other possible dockets for transfer. According to the 2021 Report on the Judicial Business of the United States District Courts, the Middle District of Florida had 6,903 civil actions pending as of September 30, 2021 (with 14 district Judges) compared with 13,678 actions in the Southern District of New York, 4,805 in the District of Maryland, and 4,569 in the Southern District of Florida. (*See* Ex. T, Table C-1.) Although the Southern District of New York is home to Slice, that District has a high case load, and Maryland and the Southern District of Florida have, respectively, fewer connections to the dispute or are further behind. However, should the Panel determine that the Middle District of Florida is unable or unwilling to consolidate these actions, Slice submits that the Panel should next consider consolidating them in the Southern District of Florida, as this is where Prepared Food Photos is located, where it filed at least one of these actions, and where it could have filed all of these actions in the first instance.

### E.      Voluntary Methods of Consolidation Have Been Rejected

The alternative, voluntary methods of coordinating these actions will not be successful. Before filing this Motion, the Slice Movants sought Prepared Food Photos' consent to transfer under 28 U.S.C. § 1404(a). (*See* Ex. R, at 1.) Prepared Food Photos opposed consolidation. (*Id.*) As a result, the Slice Movants were forced to file this Motion.

## IV.      CONCLUSION

For the foregoing reasons, the Slice Movants respectfully request that the Panel grant this Motion and enter an Order that consolidates and coordinates all pretrial proceedings in the Stock Photo Lawsuits, and transfers those cases to the Honorable Judge Mary Scriven in the Middle District of Florida.

Dated:  February 15, 2023

Respectfully submitted,

/s/ *Andrew G. Fiorella*
Mark Avsec (Ohio Bar No. 0066472)
Andrew G. Fiorella (Ohio Bar No. 0077005)
Lidia C. Mowad (Ohio Bar No. 0097973)
BENESCH, FRIEDLANDER,
        COPLAN & ARONOFF LLP
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
Telephone:  216-363-4500
Facsimile:  216-363-4588
mavsec@beneschlaw.com
afiorella@beneschlaw.com
lmowad@beneschlaw.com

**Attorneys for Defendants/Movants**
**MyPizza Technologies, Inc. *d/b/a* Slice and**
**Angelo's Pizza of Poughkeepsie, Inc.**